JOSEPHINE B. HIGGINS, as Administratrix, etc., of ROBERT R. HIGGINS, Deceased, Respondent, v. GEORGE H. MASON, JR., Appellant.*

Third Department, June 27, 1930.

*Butler, Kilmer, Hoey & Butler* [*W. P. Butler, Clarence B. Kilmer* and *C. L. Hoey* of counsel], for the appellant.

*Wyllys A. Dunham* [*Lawrence B. McKelvey* of counsel], for the respondent.

VAN KIRK, P. J. This is an automobile accident case. On a former appeal we reversed the judgment which plaintiff had

* Affd., 255 N. Y. 104.

recovered because the verdict was against the weight of evidence (226 App. Div. 426). At the second trial plaintiff again had a verdict. Plaintiff now has offered additional evidence, tending, it is claimed, to more clearly disclose the cause of the accident and defendant's liability. Although the facts are briefly and clearly stated in our former opinion, in the light of new evidence a further statement is called for.

The defendant and his wife were taking a day outing in defendant's automobile with the plaintiff and her husband, the deceased, as guests. They started on their return trip about eight o'clock in the evening. When a short distance out of Utica the car swerved. The plaintiff describes it as a sharp curve to the left — a " terrible swerve," but the car did not leave the macadam surface and the party continued on their trip. From this point the defendant, his wife, and the plaintiff, in turn, drove the car. The deceased did not drive it. From the time of the swerve until the time of the accident, neither driver noticed anything indicating the steering gear to be out of order, except that plaintiff testifies that Mrs. Mason, when driving, said to her husband, " there is something wrong with this car." Defendant says he did not hear this remark. Mrs. Mason says that she made some remark of like import to her husband because the car was logy; she and her husband say this was not unusual with that car. She says she noticed nothing suggesting anything wrong with the steering gear while driving; and Mrs. Higgins and the defendant also say that they noticed nothing. At the time of the accident the plaintiff was driving the car. Without any bump or warning the car, she says, swerved, turned to the left, ran into the ditch and was upset. It was found that the right front wheel had broken down and was entirely separated from the axle of the car. The deceased was thrown partly from the car, but his feet remained in the car. The other three were thrown out of the car; the two women going through the top. It is claimed by plaintiff that the accident was due to the breaking of the spindle bolt or pin, to which we shall refer later, and that defendant, because of the swerve near Utica, knew or should have known that there was some defect in the steering gear which required repair before the car could safely be driven.

A very important part of the evidence is a description of the manner in which the wheel is attached to a 1926 Hudson car of the model or type of defendant's car, and the effect that a broken spindle pin would have to cause such an accident. At the end the axle is divided into two arms, one directly above the other, each curved, the lower arm being shorter and less curved than the upper arm. The spindle housing sets into this space between the two arms

and is held in position by the spindle pin which passes through the upper arm, through the spindle housing and through the lower arm. This housing is an irregular piece of case hardened steel having several attachments. Considering the housing as in position between the axle arms, there is a spindle finger attachment extending out on which the wheel is set and revolves. There is another attachment extending from the side of the housing, which attachment is connected with the steering shaft and wheel, also with a tie rod which passes across the car and is attached to the housing on the opposite end of the axle, so that the two front wheels will work in harmony and in response to the motion of the steering wheel. Thus, when the housing is separated from the axle end, the wheel, which is not separated from the housing, may be still attached to the car through the tie rod, and such was the condition found after this accident.

To return to the spindle pin. It is a piece of case hardened steel three-quarters of an inch in diameter and about seven inches long. It is firmly fixed in the housing against perpendicular motion and revolution by means of a " lock pin " driven through a small hole in the housing and tightly against a flat cut in the side of the spindle pin. Thus the spindle pin is immovable in the housing. At the upper side of the housing when in position, and on the spindle pin, is a very thin washer. On top of this washer is a small ball bearing box. On top of this is another very thin dust washer which lies immediately between the ball bearing, called the thrust bearing, and the lower side of the upper axle arm. These two washers and the ball bearing thus occupy a comparatively small space on the spindle pin between the upper side of the housing and the lower side of the upper axle arm; the spindle pin fits less tightly in these than in the housing or bushings. When in position the entire housing and the spindle pin have a horizontal motion in answer to the steering wheel; the ends of the spindle pin turn in the bushings in which these ends are set in the upper and lower arms of the axle. The bushings are steel cylinders driven tightly into holes in the axle arms.

The plaintiff claims that the spindle pin had been broken and that this was the cause of the accident. After the accident the spindle pin was found broken approximately square across and an inch and a half or two inches below the top of the pin. This places the break entirely above the top of the housing and either in the space occupied by the two thin washers and the ball bearing, or in the bushing in the upper axle arm. There is nothing at the top of the spindle pin to hold a broken piece of it in position; if broken from the main portion of the pin above the top of the spindle hous-

ing in which is the lock pin, the broken piece may work, or be jarred, up and out. The spindle pin, however, is held at each end snugly in the bushing. The resistance against moving up of a two-inch piece broken from the top of the spindle pin is due to this close fitting in the bushing and oil or grease on the surface of the pin.

There is much expert testimony. It is well established now that, after such a break as above described, a car could run a long distance without the wheel going down; also, if the surface of the road is smooth, without the defect being disclosed to one driving the car. It is said also, when the break is within the narrow space, between the housing and the upper axle arm, occupied by the ball bearing box, as is the fact in this case, a special strain would rest upon the lower axle arm and the spindle pin; this would probably result in the bending of this lower arm and toeing in of the wheel and what is called a " shimmying " immediately would be observable to the driver. It is to be remembered here that the lower axle arm is a short, strong piece of steel capable of sustaining a heavy weight. Both this arm and the spindle pin are made with a large factor or margin of safety. Though broken, as this pin was found to be after the accident, still these two parts would sustain the car except against a severe jar until the metal of the pin became tired or was crystallized.

This crystallization of the spindle pin would occur at the top of the lower arm and the pin would easily break. But there is no proof that there was a second break due to crystallization. Strangely enough no witness, though the man who repaired the car was a witness, mentioned a bent condition of the lower axle arm or the major portion of the broken spindle pin. The court and jury were left to an inference that something happened which separated the major portion of the spindle pin from the lower axle arm, either by breaking of the pin, or bending of the arm; what happened is left to conjecture.

There is an embarrassment in this case due to the fact that no part of the defendant's car is presented in evidence. There is presented a complete axle with the spindle attachments of a Hudson car of the model and type of defendant's car. A spindle pin also is presented in two parts, the shorter piece being cut off smoothly straight across. Had the actual broken parts been presented there perhaps would be evidence disclosing to the court and jury whether the break of the spindle pin was an entirely new break, or an old one complete or partial; also whether either the upper or lower axle arm was bent; also whether the major portion of the spindle pin was bent. There is nothing in the evidence to indicate

that this spindle pin was not set tight in the housing in the lower arm of the axle. Neither the experts, nor the car repairers, have mentioned any loose or probably loose connections at this point. There is no mention of any occurrence which attracted attention in the action of the car between the time of the swerve near Utica and the time of the accident, except the statement said to have been made by Mrs. Mason that there was something the matter with the car, which she and her husband say referred to the fact that it was logy; and this logy condition is explained to be due to the jumping or slipping of the timing chain; and this logy action in the car had been noticeable for a long time. This logy action is nowhere attributed to the broken spindle pin.

It was necessary for plaintiff to furnish evidence showing that the accident was due to the broken spindle pin and that the defendant should have realized that the defect in the pin increased the hazard and had the car examined before the accident.

There is no proof of any occurrence at any time before the accident which would break the spindle pin. The " terrible swerve " of the car below Utica was not the cause of the break; the break is claimed by plaintiff to have been the cause of the swerve; she testifies that the car " suddenly just swerved to the left," went over at a sharp angle. A week before the accident the car was examined in a garage; attention of the repair man was called to some play in the steering wheel and he testified that he jacked up the front of the car, tested the front wheels, and found no play which suggested any break or weakness in any part of the steering connections. Too great a play in the wheel would suggest some defect and possibly a broken spindle pin, but such play was not found to exist. The test applied was the standard test. This is quite satisfactory proof that the spindle pin was not broken at the time of this examination and there is no proof that anything occurred to break it thereafter and before the accident. What happened at the time of the accident is a competent explanation why the wheel went down. The car ran off the road and into a ditch which the engineer says was about two feet wide and one and three-tenths feet deep; the sides of the ditch were practically perpendicular. The car was running about twenty or twenty-five miles an hour. At the time of the accident the car was going easterly. After the accident it rested on its side in the ditch facing westerly. This would bring the right front wheel which broke down against or over the northerly side of the ditch. The jar which would naturally have occurred when the wheel struck the perpendicular side of this ditch was sufficient to explain a break of the spindle pin and separation of the wheel from the axle. Upon

the former trial we thought that plaintiff's claim that the wheel went down on the road before it struck the ditch was against the weight of evidence. We now have in the case evidence, not presented on the former trial, that the next morning after the accident there was a gouged mark on the macadam which began about one inch deep and extended in a curving or semicircular form toward the place where the car rested after the accident; also testimony that the upper part of the spindle pin which broke off was found shortly after the accident on the right-hand side of the macadam and a short distance westerly of the broken car.

We conclude that, with this new evidence, the jury could find that the accident was due to the broken spindle pin and that the wheel went down while on the macadam; that this was the cause of the accident; and this could be found even though there is no proof that there was any jounce or jar shortly before the accident sufficient to break any part of the metal which before had sustained the weight of the car. There is evidence, above referred to, that metal will become tired or crystallized and break under no greater strain than it had before sustained. From the testimony of Professor Sayre it might be concluded that this explained the cause of the accident. We are left in much doubt, however, from the fact that this would involve a second breaking of the spindle pin at or near the top of the lower axle arm or a bending of that arm sufficient to allow the pin to be drawn from the bushing, and there is no evidence of such a break or of such a bending. But there is testimony that soon after the accident defendant, referring to the swerve near Utica, said it was a " terrible swerve " and he then " knew there was something wrong, * * * from the way the car operated; * * * the steering wheel seemed loose to him and it did not operate as it had before." Although nothing is shown to have happened before the swerve to break the pin, the admission is here, if the evidence is believed, that defendant knew, not what was wrong, but that something was wrong with the steering gear. I suppose this evidence could be believed, though neither driver noticed anything wrong from that incident until the accident.

The question remains whether or not the proof will sustain a finding that defendant ought to have realized that there was a defect in some part of the steering gear which increased the hazard and which he ought to have repaired before proceeding further. The evidence above referred to is undisputed that defendant, shortly before this trip, took his car to a garage, told the repairman that he thought his steering wheel was a little loose and that the car lagged on hills; also that this repairman tested the car and reported to defendant that the car was in good condition. There

is testimony that the swerve near Utica might have been caused because of a broken spindle pin, but there is no satisfactory explanation why thereafter the car so ran that neither of the other drivers discovered any suggestion of a defect in the steering gear which could suggest a broken spindle pin. A man who drives a car is not required to be an expert in all the mechanism of a car, nor is the owner subject to such requirements; a guest accepts him and his skill, be it more or less. The deceased was a guest in defendant's car. Defendant's duty to him was to use reasonable care not to increase his danger or to create any new danger. (*Clark* v. *Traver*, 205 App. Div. 206 and cases cited; affd., 237 N. Y. 544.) The accident did not happen because of any active negligence on the part of the defendant. If he was negligent at all it was in failing to appreciate that there was a condition in his car which might expose a guest to some extra hazard. I may now assume that the accident was caused by the broken spindle pin of which he is not shown to have had any suspicion until after the accident. I think in this case the verdict cannot be sustained without holding the defendant to a stricter rule of care than an owner of a car owes to a guest. Defendant was justified in relying upon the report of the man who examined the car shortly before he started on this trip. Nothing had happened thereafter which any person save an expert would suspect could break a spindle pin or which indicated a broken pin. A trustee of another's property is required to exercise the same degree of care in respect to that property which he, prompted by self-interest, would exercise in respect to his own affairs. (*Kavanaugh* v. *Commonwealth Trust Co.*, 223 N. Y. 103, 105.) One's life is as precious to him as is his property, and yet defendant allowed others, less strong and skillful than himself, to drive the car while he was riding in it. An owner of an automobile is not held to the high degree of care, in respect to his guests, required of a trustee. That defendant did not stop on his way home to have his car overhauled does not justify a finding that he was culpably careless of the safety of his guest.

There have been two trials and there is no probability that additional evidence can be produced by plaintiff. The judgment should be reversed and the complaint dismissed on the law, with costs, on the ground that plaintiff has failed to sustain her cause of action.

HINMAN, HILL and HASBROUCK, JJ., concur; WHITMYER, J., dissents and votes for affirmance.

Judgment reversed on the law, with costs, and complaint dismissed, with costs.